IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

George J. Evanoff, Jr.,                                    Case No. 3:07CV1754

        Plaintiff

    v.                                                              ORDER

Banner Mattress Company, Inc., et al.,

        Defendant

This is a case about benefits allegedly due to plaintiff George Evanoff under the terms of an

employment agreement. Evanoff seeks damages from defendant Banner Mattress Company [Banner]

under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. [ERISA]

and various state law claims, alleging Banner's wrongful termination of him and interference with

his benefits. Jurisdiction arises under 28 U.S.C. § 1331.

Banner, an Ohio-based company, manufactures and sells home furniture. Defendants Steven

Karp, David Karp, and Matthew Karp are Banner's joint and controlling shareholders. Defendant

ADSM Properties, Ltd., is a limited liability corporation whose principal place of business is in

Lucas County, Ohio. Defendant John Doe is trustee for the trust of Barbara Karp - Banner's former

owner and controlling shareholder.

Evanoff's six claims are for: 1) severance pay and benefits under 29 U.S.C. § 1132(a)(1)(B); 2) deferred compensation benefits under 29 U.S.C. § 1132 (a)(1)(B); 3) retaliation under 29 U.S.C. § 1140; 4) breach of contract; 5) age discrimination under O.R.C. § 4112.02 and 6) fraudulent conveyances under O.R.C. § 1336.04. Pending is defendants' motion for summary judgment as to all claims.[Doc. 58]. For the following reasons, I deny defendants' motion.

## Background

Banner hired Evanoff in September, 1979. In 1985, Banner promoted Evanoff to an executive position within the Company. On May 8, 2003, Evanoff entered into a written employment agreement ("Agreement"), which provided for deferred and severance compensation benefits. According to its terms, the Agreement would terminate on December 31, 2012.

Article IV of the Agreement "intend[s] to provide a deferred compensation benefit to the Executive." [Doc. 27-2] The plan provides that within ninety days following the Executive's termination for any reason from the Company, it shall deliver to the Executive an amount equal to ten percent of the vested balance of the Account plus a promissory note for the remaining ninety percent. The remaining amount would be paid in nine annual installments, each due on the same day of the year as the initial payment. During the payment period, interest would be computed at the Applicable Federal Rate and distributed with the annual payments. The Executive would forfeit all deferred compensation benefits if he breached the Agreement's non-compete and confidentiality provisions.

Article V of the Agreement describes the effect of termination on the receipt of benefits. If termination is without cause, the Company will pay the Executive, as severance compensation, his salary for eighteen months from the date of notice. In addition, the company agrees to continue

2

during that period to provide "such health, life and long-term disability insurance coverage which were being provided to him on the date [of] notice." [Doc. 27-2] However, if the employee is terminated for cause, "the Company shall pay the Executive his salary (as then in effect) accrued up to the last day of the month in which such termination occurs."

Section 5.3 of the Agreement states that the Company may terminate for cause for:

(d) An act or omission which constitutes a substantial failure to perform his Duties hereunder and/or gross negligence or failure to follow the direct instructions of the Board of Directors. Provided, however, no discharge shall be deemed for cause under this subsection (d) unless the Executive shall have first received written notice from the Board of Directors of the Company advising the Executive of the specific acts or omissions alleged to constitute a substantial failure to perform his Duties, hereunder, and such failure continues after the Executive shall have had a reasonable opportunity to correct the acts so complained of.

After Myron Karp died in 2004, his sons Steven, David, and Matthew Karp purchased the company from Barbara Karp, Myron's widow, who had inherited control of the company. In October, 2005, Banner Mattress paid Barbara Karp a dividend of $ 825,000. Defendants also caused a transfer of company-owned real estate to ADSM, a limited liability company.

On December 6, 2005, Steven Karp provided a revised offer of employment to Evanoff. Evanoff never responded to the proposal. On March 1, 2006, Matthew Karp became President of Banner Mattress and Evanoff's direct supervisor. On July 16, 2006, Steven Karp provided formal notice that Evanoff's original Employment Agreement would terminate on December 31, 2007, with the understanding that they would seek to negotiate a new Agreement with Evanoff. In that letter, he wrote, "We hope you see this Board action . . . in no way a reflection on your performance or your continued efforts in support of the Company." [Doc. 68, Att. C]. On August 19, 2006 Steven Karp sent a memo to Matthew Karp, copying Bard Strand and Evanoff. In that memo, he stated,

> Over the past eighteen to thirty six months, there have been substantial areas of poor performance . . . In order for these areas to be improved upon we believe it is critical that the Senior Management team (you, George and Bard) work together closely and in concert to problem-solve. We believe that part of the difficulties we have experienced are likely due to a lack of coordination, communication and continuity at the top of the organization.

*Id.* at Att. J.

On October 16, 2006, Steven Karp presented two different employment offers to Evanoff.

In that letter, he stated,

> I want to restate that we have deep gratitude for your loyalty and service to Banner Mattress these past years, and particularly during the difficult emotional times following my father's unexpected passing. . . . Although we hope you will strongly consider staying with the company, it would be naive for us to believe that you wouldn't want to consider looking elsewhere for a position.

[Doc. 74, Exh. 19].

In response to Evanoff's inquiry, defendants informed him that if they could not reach an alternate employment agreement, any payments made to him between the date he received formal notice of the Agreement's termination and his actual termination would constitute severance compensation under the Agreement.

On November 14, 2006, Evanoff filed a complaint in the Lucas County, Ohio, Court of Common Pleas seeking to clarify his rights under the Agreement. Along with his complaint, Evanoff attached documentation of confidential inter-Company communications regarding a proposed sale of the Company.

In response to this perceived breach of the Agreement's confidentiality provisions,  Steven Karp sent Evanoff a letter notifying him of a "specific breach which constitutes a substantial failure to perform [his] job duties and maintain confidentiality." [Doc. 68, Att. C]. Steven requested that

4

Evanoff provide assurances to the Board about maintaining confidentiality and the satisfactory performance of his other job duties.

In response, Evanoff asked that Steven Karp contact his attorney regarding the matter, because it involved actions undertaken in connection with his declaratory judgment lawsuit. Steven Karp, in an email, acknowledged receipt of Evanoff's letter, and stated that he would "like to spend a bit of time" with Evanoff to discuss the issue. With regard to the attorneys, he wrote, "regardless of whether your attorney talks to my attorney on matters, it's reasonable for us to expect that confidential communications to you as an Executive of Banner don't end up being eventual attachments, exhibits or references in court proceedings." [Doc. 68, Att. F].

Banner placed Evanoff on administrative leave of absence effective December 29, 2006, and did not require him to come to work after December 22, 2006. Evanoff did not report to work after December 22nd. On January 11, 2007, Matthew Karp sent Evanoff a letter in which he recounted that defendants had provided him with notice on August 1, 2006, that his Agreement with Banner Mattress would terminate on December 31, 2007, essentially giving him seventeen months notice. Karp then stated that the Board of Directors decided to change that notice from seventeen months to six months, and that therefore, they were providing, on January 11, 2007, notice of a change in his termination date to February 1, 2007. The letter attributed this to

> a) changes in business performance that we believe are related to executive performance and practices; b) failure to follow Board and President directives and exceeding authority within your position; and, c) your refusal to provide [defendants] with, as directed, a written explanation of your reasons for making public disclosure of sensitive information, and written assurances about maintaining confidentiality and the satisfactory performance of your other job duties. Currently you are on paid administrative leave and you will remain so until February 1, 2007. Further details will be forthcoming in a separate communication regarding continuation of your salary and benefits.

[Doc. 68, Att. J].

Evanoff's employment ended February 1, 2007. Defendants stopped his continuing paychecks on March, 2007, and his medical, disability, and life insurance benefits on April 1, 2007. They terminated his pay and benefits without any notice. Shortly thereafter, Evanoff filed the current suit in federal court and voluntarily dismissed his initial state court action.

Evanoff, in his complaint, alleges three ERISA violations: denial of severance pay and related benefits, denial of deferred compensation benefits and retaliation. Evanoff also alleges state law claims: breach of contract, age discrimination and fraudulent conveyances.

Evanoff seeks damages arising out of defendants' alleged breach of the terms of the Agreement. Defendants respond that Evanoff's for-cause termination makes him ineligible to receive continued severance and deferred compensation benefits. Therefore, defendants argue, I should grant defendants summary judgment on each of Evanoff's claims.

### Standard of Review

I must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the district court of its motion's basis, and identifying the record's portions demonstrating the absence of a genuine issue of material fact. *Id.* at 323. The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)(quoting Fed.R.Civ.P. 56(e)). The nonmoving party cannot rest on its pleadings or merely reassert its previous allegations; rather, the nonmovant must show that there is more than "some metaphysical doubt as to the material facts."

6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56(e) "requires

the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete

evidentiary material in its position's support. *Celotex, supra*, 477 U.S. at 324.

In deciding the motion for summary judgment, I will accept the evidence of the nonmoving

party as true, resolve all doubts against the nonmoving party, construe all evidence in the light most

favorable to the nonmoving party, and draw all inferences in the nonmoving party's favor. *Eastman

Kodak Co. v. Image Technical Services.*, 504 U.S. 451, 456 (1992). I shall rule in favor of summary

judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show no genuine issue of material fact exists and the law entitles

the movant to summary judgment.

## Discussion

### 1. Is There a Genuine Issue of Material Fact Regarding
### Evanoff's Claim to Severance Pay and Benefits?

Defendants assert that I should grant summary judgment on Evanoff's claim for severance

pay and benefits under § 1132(a)(1)(B) of ERISA. 29 U.S.C. § 1132(a)(1)(B). Since Evanoff has

demonstrated the existence of material issues of fact, I deny defendants summary judgment as to this

claim.

In *Evanoff v. Banner Mattress Co., Inc.*, 526 F.Supp.2d 810, 815 (N.D. Ohio 2007), I

determined that ERISA does not cover Evanoff's severance pay plan. *Id.* ("The severance plan at

issue here is not extensive and complex enough to require an on-going administrative scheme, and

thus, is not covered by ERISA."). Despite this finding, I held that I did have supplemental

jurisdiction over Evanoff's claims.

7

The Sixth Circuit has explained that the "fundamental legal framework differs for ERISA and non-ERISA plans." *Cassidy v. Azko Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir. 2002). It observed, "when interpreting ERISA plans, federal courts apply 'general rules' of contract law as part of the federal common law. The federal common law may draw upon state law principles, but state law is not controlling authority. Interpreting a non-ERISA contract claim requires federal courts to look only to state law principles, and has nothing to do with federal common law." *Id. See also, Bragg v. ABN Amro North America, Inc.*, 2008 WL 4425514, at *14 (E.D. Mich.) (explaining that state law would govern plaintiff's claim for benefits under the non-ERISA plan).

I must therefore analyze Evanoff's claim for severance pay and benefits under principles of Ohio state contract law. The Ohio Supreme Court has held that "if a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Buckeye Check Cashing, Inc. v. Madison* 2008 WL 4436484, at *2 (Ohio App. 8 Dist.) (citations omitted). However, "when the language in a contract is reasonably susceptible to more than one interpretation, the meaning of the ambiguous language is a question of fact. *Id.*

Evanoff's entitlement to severance pay and benefits under the Agreement depends on whether Banner terminated his employment "for cause" or without cause. Section 5.3 of the Agreement provides that in the event of termination for cause, the Company will only pay the employee's salary "(as then in effect) accrued up to the last day of the month in which such termination occurs." [Doc. 68, Att. B]. However, in the event of termination without cause, "the Company will continue to pay the Executive, as severance compensation, his salary (then in effect) for a period of eighteen (18) months from the date of the notice given to the Executive." *Id.*

8

The parties dispute whether Evanoff's termination constitutes "termination for cause" in accordance with the terms of the contract. The Agreement states that

> No discharge shall be deemed for cause . . . unless the Executive shall have first received written notice from the Board of Directors of the Company advising the Executive of the specific acts or omissions alleged to constitute a substantial failure to perform his Duties, hereunder, and such failure continues after the Executive shall have had a reasonable opportunity to correct the acts so complained of.

*Id.*

Defendants argue that they complied with the Agreement and terminated Evanoff for cause. They provided him with notice regarding his breach of § 6.2 of the Agreement, which required that Evanoff maintain confidentiality. They gave him an opportunity to respond and provide assurances regarding maintaining confidentiality in the future. According to defendants, Evanoff refused to provide such assurances. Therefore, defendants terminated him for cause in accordance with § 5.3(d) of the Agreement, and have no obligation to provide him with continued severance payments and other benefits. Defendants thus seek summary judgment on this claim.

Evanoff, on the other hand, insists that he responded to Steven Karp's letter regarding his alleged breach of confidentiality. He "respectfully requested" that Steven Karp have his attorneys contact Evanoff's attorneys because the discussion involved his declaratory judgment action. [Doc. 68, Att. E]. Steven Karp acknowledged receiving Evanoff's response, and requested a meeting. However, he indicated that discussions between their lawyers would not provide a resolution. He wrote, "regardless of whether your attorney talks to my attorney on matters, it's reasonable for us to expect that confidential communications to you as an Executive of Banner don't end up being eventual attachments, exhibits or references in court proceedings." [Doc. 68, Att. F].

9

There is no evidence as to whether Karp contacted the attorneys in response to Evanoff's request. According to Evanoff, Karp never raised the subject of confidentiality. [Doc. 68, Att. A]. Karp, on the other hand, states that he did discuss the breach with Evanoff, and that Evanoff refused to admit responsibility or provide reassurance to the Board. [Doc. 69, p. 107-109].

While the Agreement states that for cause termination under § 5.3(d) requires that the employee receive notice and the opportunity to explain and provide reassurances, it does not define or explain what type of response would constitute a proper response to the notice, especially when explaining and providing reassurances would implicate an action filed in state court.

Nor does the Agreement suggest that in such situation, it would be unreasonable or insufficient to ask that Banner contact the employee's attorneys with regard to the request. Furthermore, the Agreement does not elaborate on what a "reasonable opportunity to correct the acts so complained of" entails.

Since it is unclear whether or not Evanoff's response that defendants contact attorneys was unreasonable under the terms of the Agreement, and since parties dispute whether or not Evanoff made any statements regarding the alleged breach of confidentiality at the follow-up meeting between himself and Steven Karp, I find that genuine issues of material fact remain.  I must therefore deny defendants summary judgment with regard to Evanoff's claim for severance benefits.

### 2. Is There a Genuine Issue of Material Fact Regarding Evanoff's Claim for Deferred Compensation Benefits under ERISA?

Section 1132(a)(1)(B) states that "a civil action may be brought (1) by a participant or beneficiary (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

10

The statute does not set forth a standard of review for adjudicating a benefits dispute under this section.  However, in *Firestone v. Bruch*, 489 U.S. 101 (1989) the Supreme Court stated that "a denial of benefits challenged under 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115.

In the present case, the Employment Agreement, which sets forth the terms of the deferred compensation plan, does not give the administrator or fiduciary discretionary authority to determine eligibility of benefits or to construe the terms of the plan. *See, e.g., Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000) (finding discretionary authority where the agreement stated, "this Board has the primary responsibility for decisions regarding eligibility rules, type of benefits, administrative policies, management of Plan assets, and interpretation of Plan provisions."); *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442 Trust Funds*, 64 F.3d 238, 241 (6th Cir. 1995) (giving decision-maker power to construe the terms of the plan).

In reviewing a claim de novo, I review it "as [I] would . . . any other contract claim - by looking to the terms of the plan and other manifestations of the parties' intent. *Bruch, supra*, 489 U.S. 101, 112 - 13.  In the Sixth Circuit, there must be "patent ambiguity" before I can consider evidence of intent. *Schachner v. Blue Cross & Blue Shield*, 77 F.3d 889, 893 (6th Cir. 1996). "When an employee welfare plan is ambiguous on its face (i.e. its terms are reasonably susceptible to more than one meaning), a court may typically review extrinsic evidence to determine the meaning of the plan's terms." *Id.*

I must first look to the terms of the Agreement. Article IV outlines the deferred compensation benefits available to Evanoff. Section 6.3 of the Agreement calls for forfeiture of these benefits if Evanoff breaches confidentiality. It states,

> If the Executive commits a breach, or threatens to commit a breach, of any of the provisions of Sections 6.1 and/or 6.2 (which mandates confidentiality), the Executive agrees that the Company shall have the following rights:
>
> (A) The right to have the provisions of these Sections 6.1 and/or 6.2 specifically enforced by any court having equity jurisdiction, it being acknowledged and agreed that any such breach or threatened breach will cause irreparable injury to the Company and that money damages will not provide an adequate remedy to the Company; and
>
> (B) The right to pursue whatever legal remedies are available to it.
>
> In addition to the foregoing, in the event such breach is proved in a legal proceeding or admitted to by the Executive, as liquidated damages and not as penalty, the Executive shall forfeit all monies owed to him under the provisions of Article IV, and specifically under Section 4.6, thereof.

Defendants argue that under the terms of the Agreement, Evanoff committed a breach of confidentiality, and admitted to the same. Therefore, pursuant to § 6.3, Evanoff is not entitled to deferred compensation benefits under ERISA, and I should grant defendants' motion for summary judgment.

Evanoff responds that breach of confidentiality has not been proven in a legal proceeding, and asserts that he never admitted to such a breach.  Instead, he points to parts of his deposition in which he expressly states that he did not believe his filings in court constituted a breach of the Agreement's confidentiality requirement:

> Q. Did you ever review the documents that were attached to the original complaint that had been filed with the Lucas County Court of Common Pleas by you?
>
> A. I didn't feel that was a breach.
> [Doc. 61, p. 129].

12

Evanoff also testified, "I feel that recording my termination notice was not a breach of confidentiality. I had no choice." *Id*. at 132.

In their briefs, defendants cite to other sections of Evanoff's deposition in which he acknowledged that he understood the confidential nature of the proposed sale of the Company, and that court filings are public records. *Id*. at 129. Evanoff, however, never explicitly admits to breaching the terms of the Agreement.

Under Rule 10 of the Ohio Rules of Civil Procedure, "When any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading. If the account or written instrument is not attached, the reason for the omission must be stated in the pleading."

While Evanoff could argue that Rule 10 of the Ohio Rules of Civil Procedure mandated that he attach the termination letter that included the confidential information, Evanoff could have redacted that information, or filed the letter under seal (while still filing a redacted version for public record).

However, since Evanoff's alleged breach of confidentiality has not been proven in a legal proceeding, and since Evanoff's deposition testimony presents conflicting evidence regarding his admission of a breach of confidentiality, genuine issues of material fact remain, and I deny summary judgment as to this claim.

### 3. Is There a Genuine Issue of Material Fact Regarding Evanoff's Claim for Retaliation under 29 USC § 1140?

Defendants also seek summary judgment on Evanoff's retaliation claim.  According to Evanoff, the defendants took several retaliatory actions after he filed his state court declaratory judgment action. These actions included: 1) expensing an unusually large amount of the Company's

inventory in order to reduce Plaintiff's annual profit-based bonus under the Agreement; 2) limiting

Plaintiff's access to meetings among executives of the Company; and 3) limiting plaintiff's access

to financial and computer information. Following these steps, defendants: 1) banned plaintiff from

coming into work after December 22, 2006; 2) terminated his employment on February 1, 2007; 3)

terminated his severance pay on or about March 15, 2007; and 4) terminated his continuing health,

life and disability insurance benefits on or about April 1, 2007.

> Section 1140 of ERISA states:
>
> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or
> discriminate against a participant or beneficiary for exercising any right to which he
> is entitled under the provisions of an employee benefit plan, this subchapter, section
> 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301
> et seq.], or for the purpose of interfering with the attainment of any right to which
> such participant may become entitled under the plan, this subchapter, or the Welfare
> and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge,
> fine, suspend, expel, or discriminate against any person because he has given
> information or has testified or is about to testify in any inquiry or proceeding relating
> to this chapter or the Welfare and Pension Plans Disclosure Act. The provisions of
> section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140.

To state a retaliation claim under ERISA, Evanoff must show, through either direct or

circumstantial evidence, that defendants "had the specific intent to violate ERISA." *Schweitzer v.*

*Teamsters Local 100*, 413 F.3d 533, 537 (6th Cir. 2005). When there is no evidence of specific

intent, I must apply the Burdine burden - shifting approach. *Hamilton v. Starcom Mediaquest Group,*

*Inc.*, 522 F.3d 623, 628 (6th Cir. 2008). Evanoff must establish a *prima facie* case for retaliation.

The burden then shifts to defendants to offer a legitimate, non-discriminatory reason for their

adverse actions. Evanoff must then show that the reasons defendants offer amount to pretext for

retaliation. *Id.*

14

For Evanoff to make a *prima facie* case of retaliation, he must show that he engaged in ERISA - protected activity, he suffered an adverse employment action, and a causal link between the protected activity and the adverse employment action exists. *Id.*

Evanoff demonstrated the first two elements of a *prima facie* retaliation claim. ERISA protects bringing a declaratory judgment action in state court and Evanoff suffered adverse employment actions. Defendants placed him on paid administrative leave on December 22, 2006, terminated his employment on February 1, 2007, and terminated his severance pay and deferred compensation benefits in March and April 2007.

Evanoff presents a number of facts to support his contention that a causal link exists between the declaratory judgment action he filed, and the adverse employment actions he suffered. First, the adverse employment actions occurred within one to three months of Evanoff's ERISA - protected activity. While this factor alone is not dispositive, the Sixth Circuit does consider the proximity of time in determining the existence of a causal link under ERISA. *See, e.g., Ngyuen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("Although no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after a plaintiff's exercise of protected rights is relevant to causation.").

In addition, Evanoff testified that at their meeting in December, defendant Steven Karp told Evanoff that he was "furious" that Evanoff filed a declaratory judgment action. [Doc. 61, p. 217]. Evanoff stated in his deposition that his "exclusion from management meetings accelerated after he filed the action." *Id*. at 190.  Evanoff argues that Steven Karp testified that defendants terminated Evanoff's continued pay and benefits in March, 2007, because they could not reach agreement with him on the settlement of his declaratory judgment lawsuit. [Doc. 69, p.48].

15

After Evanoff has established a prima facie retaliation claim, the burden falls on the defendants to present legitimate, non-discriminatory reasons for the adverse actions.  Defendants argue that they possessed legitimate reasons for terminating Evanoff's employment, and for terminating his severance and deferred compensation benefits. They maintain that Evanoff disclosed confidential information when he filed the declaratory judgment action, that he refused to provide assurances to the Board of Directors that he would observe confidentiality rules in the future, and that his performance did not meet defendants' expectations.

After a defendant provides legitimate, non-discriminatory reasons for the adverse employment actions, the burden falls upon the plaintiff to show that these reasons are pretext. According to the Supreme Court in *Reeves v. Sanderson*, 530 US 133, 143 (2000), a plaintiff may establish pretext by showing the employer's proffered explanation is unworthy of credence. The Sixth Circuit has held that because "an employer's true motivations are particularly difficult to ascertain" in a retaliation case, "caution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation through direct or circumstantial evidence." *Singfied v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 564 (6th Cir. 2004).

Here, plaintiff has established a prima facie inference of retaliation and presents sufficient evidence to suggest that defendants' proffered reasons are pretext. First, Evanoff claims that Steven Karp expressed in his meeting on December 12, 2006, that he was "furious" with Evanoff for filing a declaratory judgment action. In *Dunn v. Elco Enterprises, Inc.*, 2006 WL 1195867, at *8 (E.D. Mich.), the district court denied summary judgment, and noted that the defendant employer testified that he was "upset" with the plaintiff for his ERISA - protected activity. Evanoff also notes that even in their own motion for summary judgment, defendants imply that they took adverse employment

16

actions due in part to Evanoff's refusal of ongoing employment offers, despite the fact that Evanoff had no obligation to accept any of their employment offers. [Doc. 60, p. 21].

Moreover, Evanoff introduced evidence that raises doubt regarding defendants' assertion that they terminated Evanoff due to deficient performance. Defendants testify that Evanoff's performance deteriorated. To support this claim, they repeatedly point to an August 19, 2006, memo from Steven to Matthew Karp, copying Bard Strand and Evanoff. In that memo, he states,

> Over the past eighteen to thirty six months, there have been substantial areas of poor performance . . . In order for these areas to be improved upon we believe it is critical that the Senior Management team (you, George and Bard) work together closely and in concert to problem-solve. We believe that part of the difficulties we have experienced are likely due to a lack of coordination, communication and continuity at the top of the organization.

[Doc. 68, Att. J].

Although defendants repeatedly use this letter as evidence that Evanoff's performance had been deteriorating over the prior eighteen to thirty-six months, Steven Karp addressed the letter to Evanoff's boss, Matthew Karp, and he raises no specific performance issues with regard to Evanoff. Nor does he ask Evanoff to provide an explanation or reassurances regarding specific areas of performance. Besides this letter, and testimony regarding friction between Evanoff and defendants, defendants offer no evidence of deterioration in Evanoff's performance.

Instead, the evidence indicates that defendants were pleased with Evanoff's performance. On October 16, 2006, Steven Karp presented two employment offers to Evanoff. [Doc. 74, Exh. 19]. In that letter, Steven Karp presents the options, and says,

> I want to restate that we have deep gratitude for your loyalty and service to Banner Mattress these past years, and particularly during the difficult emotional times following my father's unexpected passing. . . . Although we hope you will strongly consider staying with the company, it would be naive for us to believe that you wouldn't want to consider looking elsewhere for a position . . .

17

*Id*.

In this memo, defendants raise no performance issues.  Instead, they offer him significant roles in the Company.

In defendants' July 16, 2006, letter providing notice regarding the termination of Evanoff's employment agreement, defendants point out that the termination is "in no way a reflection of performance." [Doc. 68, Att. C]. On December 27, 2006, defendants sent out an email praising Evanoff for his contributions to the Company. [Doc. 69, p. 131-32]. The fact that defendants claim that Evanoff had performance issues over the preceding eighteen to thirty-six months, despite the evidence to the contrary, indicates that defendants proffered reasons are pretext for retaliation.

### 4. Is There a Genuine Issue of Material Fact
### Regarding Evanoff's Breach of Contract Claim?

Evanoff alleges that an agreement existed between himself and Banner and that, while he fulfilled his obligations under the Employment Agreement, defendants failed to fulfill their obligations. Plaintiff contends that the defendants did not follow the contract's requirements regarding provision of severance and deferred compensation benefits in cases of termination without cause, and none of the situations that allow for termination for cause existed. Defendants argue that they terminated Evanoff for cause in accordance with the Agreement's terms, and therefore seek summary judgment on this claim.

In Ohio, to prove a breach of contract claim, a plaintiff must demonstrate by a preponderance of the evidence that: 1) a contract existed; 2) the plaintiff fulfilled his obligations; 3) the defendant failed to fulfill its obligations; and 4) this failure caused damages. *Barron v. Vision Service Plan*, 2008 WL 2622940, at *5 (N.D.Ohio).

18

I deny summary judgment on this claim for the same reasons that I denied defendants summary judgment on Evanoff's first claim for severance benefits. From the terms of the contract, it is unclear whether or not Evanoff's response to Steven Karp's notice constitutes provision of reasonable reassurances regarding his breach of confidentiality. There is no indication that the defendants acted on Evanoff's response by having the attorneys meet to further discuss the issue.

The parties disagree on the adequacy of Evanoff's response to defendants request for reassurances. They dispute whether they had a discussion on confidentiality and whether or not Evanoff actively refused to provide reassurance that he would maintain confidentiality at a meeting between himself and Steven Karp.

Also, defendants do not identify any notice given to Evanoff in which they allege other specific performance deficiencies. Since it is unclear whether or not defendants breached the terms of the Agreement, I deny summary judgment.

### 5. Is There a Genuine Issue of Material Fact
### Regarding Evanoff's Claim for Age Discrimination?

Evanoff also brings a claim for age discrimination against defendants under O.R.C. § 4112.02, which states that it shall be an unlawful discriminatory practice:

> (A) For any employer, because of the . . . age . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

A plaintiff must establish a *prima facie* case of age discrimination either directly or indirectly. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St. 3d 578, 583 (1996). To establish a *prima facie* case directly, the plaintiff must show by a preponderance of the evidence that the employer was motivated by discriminatory intent. *Id.* at 587. To prove a *prima facie* case indirectly, a plaintiff

19

must present evidence that the plaintiff: 1) is a member of the statutorily protected class; 2) suffered an adverse employment action; 3) was qualified for the position; and 4) was replaced by a substantially younger person. *See, e.g., Samadder v. DMF of Ohio, Inc.*, 154 Ohio App. 3d 770, 780 (2003). If a plaintiff presents a *prima facie* case of age discrimination, the defendant may overcome the presumption of discrimination by articulating any legitimate, non-discriminatory reason for its actions. The burden then shifts to the plaintiff to show that the defendant's rationale was a mere pretext for discrimination. *Id.*

Defendants argue that Evanoff's claim for age discrimination fails because he cannot demonstrate that he was qualified for the position and was replaced by a substantially younger person. They also claim that they offer legitimate and non-discriminatory reasons for Evanoff's termination, and Evanoff cannot show that defendants' reasons are pretext.

Defendants claim that Evanoff was not qualified for his position. They state that "constant friction following the ownership transition" proves that his performance did not meet expectations. They also rely on the memo from Steven Karp to Matthew Karp, dated August 19, 2006, (copying George Bard and Evanoff) in which Karp notes "substantial areas of poor performance" within the Company that were occurring "over the past eighteen to thirty-six months." As noted earlier, this memo fails to specify Evanoff's performance deficiencies, and fails to request an explanation or future reassurances from him regarding performance deficiencies.

Defendants also claim that Evanoff was not replaced by a substantially younger person. In fact, they assert that Evanoff's duties were reassigned to a number of employees, including Wayne Leahey (56, six years older than plaintiff) and Bard Strand (54, four years older than Evanoff).

20

Finally, defendants offer several legitimate, non-discriminatory reasons for Evanoff's termination for cause, and subsequent termination of benefits.  They state that friction developed after they implemented the new management structure, and sought to conclude a new employment agreement with Evanoff. In addition, they noted the existence of deficiencies in Evanoff's performance that he refused to remedy.  They again rely on the letter cited above from Steven Karp to Matthew Karp, copying Bard and Evanoff, that discusses the Company's "substantial areas of poor performance."  Finally, they allege that Evanoff breached confidentiality and failed to provide reassurances that such a breach would not occur again.

Evanoff disputes defendants' contention that he was unqualified for his position. He notes that they point to a memo from Steven Karp to Matthew Karp in which Steven Karp notes "substantial areas of poor performance, etc."  Yet this memo never specifically criticizes Evanoff for poor work performance or requests that he provide reassurances addressing particular deficiencies.

Instead, Evanoff presents evidence that defendants valued Evanoff's performance. He notes a November 26, 2005 email in which Steven Karp wrote,

> I do want to reinforce that we do very much rely on and value your expertise in the furniture industry. We know your contribution to the organization is immense and you make key decisions every day. We have entrusted you with the responsibilities of fully running the business since our father's death and you have never let us down.

[Doc. 71, Exh. 6].

Additionally, in the July 16, 2006, "formal notice" of Evanoff's Agreement, defendants state that the termination was " .  . . in no way a reflection on your performance or your continued efforts in support of the company." [Doc. 68, Att. C]. In Steven Karp's memo dated October 19, 2006, he

21

offered, "I want to restate that we have deep gratitude for your loyalty and service to Banner Mattress these past years." [Doc. 74, Exh. 19].

Plaintiff's job was to run the company. Even if defendants had expressed some disaffection with him and his performance, plaintiff has shown that he was able to do his job, and had done it satisfactorily for a long time. This satisfies the qualified element of plaintiff's *prima facie* case. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003).

In addition to showing that he is qualified for his position, Evanoff must also demonstrate that his replacement was substantially younger in age. According to the Sixth Circuit, "an age difference of six years or less between an employee and a replacement is not significant." Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003). Thus, a replacement who is seven years younger could qualify as a replacement of "substantially younger age."

Evanoff asserts that one replacement, Phil Frost, is almost seven years younger than Evanoff. Steven Karp testified that Frost assumed responsibility over merchandising, purchasing, warehouse and delivery, Evanoff's former responsibilities. Evanoff also notes that Matthew Karp replaced him as President of Banner Mattress, and that Karp is nineteen years younger than Evanoff.

Finally, Evanoff submits that the reasons that defendants give for his termination and terminated benefits are pretext. He argues that defendants foreclosed possible discussions regarding the breach of confidentiality. Additionally, as noted above, despite their assertions that Evanoff had performance deficiencies, there is no specific evidence of what these deficiencies were, and defendants provide no record of giving Evanoff notice of alleged performance deficiencies, besides their notice regarding his alleged breach of confidentiality. Instead, the evidence suggests that defendants appreciated Evanoff's performance.

Because there is a genuine issue of material fact as to how to weigh the significance of Evanoff's replacements in light of the fact that some were older than Evanoff and two were substantially younger, and because plaintiff presents evidence that defendants' reasons for their adverse employment decisions were pretext, summary judgment is denied as to plaintiff's age discrimination claim.

### 6. Is There a Genuine Issue of Material Fact Regarding Evanoff's Fraudulent Conveyances Claim?

Finally, Evanoff brings a claim for fraudulent conveyances. He alleges that the Company engaged in several transactions with the intent to hinder the Company's ability to pay Evanoff benefits under the Agreement and reduce the Company's bonus compensation liability to Evanoff.

He alleges the following fraudulent conveyances: 1) creating Defendant ADSM Properties, Ltd with the intent to transfer assets of the Company to ADSM to hinder the Company's ability to pay Evanoff benefits under the Agreement; 2) causing the Company to distribute a significant portion of the Company's reserves ($825,000 in cash) to John Doe, trustee of their mother's trust, with the intent to reduce the value of the Company and hinder the Company's ability to pay benefits under the Agreement, and for which the Company received no consideration; 3) directing Evanoff to distribute real property to ADSM Properties, with the intent to reduce the value of the Company and hinder the Company's ability to pay benefits under the Agreement, and for which the Company received no consideration; and 4) directing Evanoff to execute long-term leases on behalf of the Company for the real property that had been transferred to defendant ADSM Properties at lease rates higher than the prevailing rate with the intent of reducing the value of the Company and hindering its ability to pay benefits under the Agreement.

Section 1336.04 of the Revised Code states:

23

(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation in either of the following ways:

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies;
>
> > (A) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debt were unreasonably small in relation to the business or transaction; or
> >
> > (B) The debtor intended to incur or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Evanoff relies on subsection (A)(1) for his fraudulent conveyance claim. Defendants argued that Evanoff presented no evidence to show intent to hinder, delay or defraud Evanoff. Evanoff, on the other hand, noted that the statute calls for the consideration of various factors in determining whether or not actual intent existed.

The statute states:

(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

> (1) Whether the transfer or obligation was to an insider;
>
> (2) Whether the debtor retained possession or control of the property transferred after the transfer;
>
> (3) Whether the transfer or obligation was disclosed or concealed;
>
> (4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) Whether the transfer was of substantially all of the assets of the debtor;
>
> (6) Whether the debtor absconded;

24

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Ohio courts have held that plaintiffs may establish actual fraudulent intent by proving as few as three badges of fraud. *Permasteelisa CS Corp. v. The Airolite Co.*, 2007 WL 4615779, at *5 (S.D. Ohio). In this case, Evanoff provides more than three badges of fraud. He offers evidence that the transfer was to an insider, the debtor retained possession or control of the property transferred after the transfer, there was no consideration for the transfers and the transfers occurred shortly before and shortly after substantial debt was incurred.

The other badges of fraud do not apply to this case. Defendants disclosed the transfer, the debtor did not abscond or remove or conceal assets, the debtor was not insolvent and did not become insolvent shortly after the transfer was made or the obligation was incurred and the debtor did not transfer the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

After showing three indicia of fraud, "the burden shifts to the defendant to prove that the transfer was not fraudulent." *Id*. The inference of actual intent to defraud may be rebutted by a showing that the transfer was made in good faith and that the transferee paid reasonably equivalent

25

value. *Id*. In this case, defendants fail to show that they received consideration for their transfers. Since plaintiffs demonstrate the existence of more than three indicia of fraud, and defendants fail to rebut the presumption of fraud, I deny summary judgment as to this claim.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion for summary judgment [Doc. 60] be, and the same hereby is overruled as to Evanoff's claims for severance and deferred compensation benefits under ERISA, retaliation under ERISA, breach of contract, age discrimination and fraudulent conveyances.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge
